[Crim. No. 324. Fourth Appellate District.—February 20, 1936.]

THE PEOPLE, Respondent, v. RAYMOND DALRYMPLE, Appellant.

Harry H. Parsons and Chas. G. Potter for Appellant.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

MARKS, J.—By an information filed by the district attorney of San Bernardino County, defendant was accused of the crime of murdering Albie Karnes on June 28, 1935. He was found guilty of manslaughter and has appealed from the judgment and from the order denying his motion for new trial.

Defendant owned twenty acres of land a few miles east of the city of San Bernardino. On the land were two small houses which defendant had rented to Albie and Orvel Karnes in May, 1935. There was also a garage with a room which defendant occupied as his living quarters. In the Karnes family were several brothers and a Mr. Mills, a father-in-law of one of them, but not all of them lived on the Dalrymple place.

A few days prior to June 28, 1935, defendant had made some beer which he and Orvel Karnes owned jointly. About the middle of the afternoon of that day defendant was reclining on a couch in his yard which was in the rear of the house occupied by Orvel. While he was thus resting Lester Karnes and Mills drove a truck into this back yard and left it standing between the house and the garage. They and defendant drank some of the beer. While they were drinking it Orvel Karnes, his wife, and Clarence Karnes arrived at the place. Mrs. Karnes went into the house and the two men joined the other three in the beer drinking. During this time the matter of wrestling came up and defendant and Lester Karnes nominated themselves as antagonists. Up to this point in the happenings of the afternoon the evidence is in general accord. It contains sharp conflicts as to the ensuing events.

The jury evidently accepted as true the clear and convincing evidence of the witnesses for the people and did not believe the story told by defendant while a witness in his own behalf. The people's witnesses portray the following:

Defendant and Lester Karnes commenced to wrestle. Defendant forced Lester to his hands and knees, getting a "choke hold" or "strangle hold" upon him. Orvel Karnes told defendant to wrestle fair and stop choking Lester. De-

fendant told Orvel to keep out of the match and struck Lester between the eyes with his fist and kicked him in the face with his heel. Orvel struck defendant in the face with his fist. Lester and defendant got to their feet and fought, several blows being struck by each. During the fight Orvel went over near the door of defendant's living room and Clarence separated the fighters. Defendant broke away and, threatening to kill the Karnes, ran into his living room and secured a loaded double-barreled twelve-gauge shot gun. Orvel followed him in and grappled for possession of the gun. He called in his brother Clarence and the two disarmed defendant. They took the gun to Orvel's house where they were followed by Lester and Mills. They unloaded the gun, Clarence putting the shells in his pocket. The faces of defendant and Lester had been cut and bruised during the fight. This ended the first phase of the trouble, with defendant in his own living room, and all the Karnes in Orvel's house. During all this time Albie Karnes had been in the living room listening to the radio and up to this point knew nothing about the fight.

Defendant sat on his bed for a few minutes and then armed himself with a thirty-eight caliber revolver loaded with two good cartridges and one that had been snapped and had not fired. Thus armed he went to a place near Lester's truck and walked back and forth muttering and looking toward Orvel's house. About fifteen minutes after the first trouble had ended Lester wanted to drive to his home in his truck. Albie volunteered to go out and talk to defendant. He went out of the house followed at a distance of a few feet by Lester. The two thus approached defendant. When Albie was close to defendant, Dalrymple struck him with his left fist, drew his revolver with his right hand and shot Albie in the neck, from which wound he died. As Albie fell to the ground defendant shot Lester in the abdomen. Neither Albie nor Lester were armed with anything and neither made a threatening movement or gesture toward defendant. On hearing the shots the other members of the Karnes family ran from the house to the yard. Defendant cursed them, threatened to kill them, and pointed his revolver at them. They took refuge behind bushes and the truck and one of the men called for the shot gun. On hearing this defendant left and surrendered to a peace officer. He was taken to the

county hospital where his bruises and cuts were dressed. On the way he told the officers in charge of him that he had shot Albie and Lester and that he would have killed the Karnes family if he had possessed a sufficient number of cartridges.

Defendant relied on the defense of self-defense. He testified that just before the shooting he was standing at a faucet in his yard washing his face. One of his dogs growled and he turned and saw Albie standing over him with a beer bottle in his upraised hand with Lester standing immediately behind him; that Albie struck but that defendant warded the blow from his head at which it was aimed; that defendant retreated but stepped into a ditch and fell prone on the ground; that Albie and Lester beat and kicked him and threatened to take his life; that he shot only to save his life, or at least to save himself from serious bodily injury.

On the evening of June 28, 1935, defendant was interrogated by a deputy district attorney of San Bernardino County and the questions and his answers were taken down in shorthand and transcribed by a court reporter. On that occasion he gave a very different account of the killing than the one which he detailed on the witness stand.

Defendant urges many errors in the acceptance and rejection of evidence, instructions to the jury, and arguments of the deputies of the district attorney. The comments of the trial judge on the evidence were within the rules laid down in *People* v. *Talkington,* 8 Cal. App. (2d) 75 [47 Pac. (2d) 368]. The arguments of the deputies of the district attorney were clear and forceful, there was nothing prejudicial in them and no exception was taken by defendant to any part of them. The charge to the jury was fair and correctly stated the law of the case.

We have studied the entire record and can find nothing in it that would warrant a reversal of the judgment. The evidence of the guilt of defendant is clear and convincing. No good reason appears for an extended discussion of the many alleged technical errors of which defendant complains. None of them were prejudicial.

The judgment and the order denying a new trial are affirmed.

Barnard, P. J., and Jennings, J., concurred.